WESTON RALSTON AND JOHN WEST, RESPONDENTS, *v.* K. P. PLOWMAN, APPELLANT.

MINING LAW—DAMAGES.—In the absence of any agreement, regulation, or custom authorizing it, one person has no right to run his tail-race or sluicing-flume on to the dumping-ground of another who had a prior right thereto, and no damage can be claimed of the latter for filling up such race or flume, if he do not prevent the former from dumping on his own ground.

EVIDENCE.—Parol evidence can not be given of a mining custom, when there are witten rules or regulations of the mining district in force on the same subject.

INSTRUCTIONS.—It is erroneous to instruct a jury to find a verdict according to mining customs, "if such customs are not contrary to law." It is likewise erroneous to instruct a jury, if they believe the version of the case by one or the other party to be correct, they will find in his favor.

JURY MUST FIND FACTS—COURT MUST GIVE THE LAW.—A verdict must be supported by the facts found by the jury, and the law must be given to them by the court.

APPEAL from the district court of the second judicial district, Boise county.

*George Ainslie, and Huston & Gray,* for the appellant.

*R. E. Foote,* for the respondents.

HOLLISTER, J., delivered the opinion. WHITSON, J., concurred.

In this case the court permitted parol evidence to be given of the local mining customs, when it appears from the record that the regulations of the locality or mining district were recorded in the proper office, according to the laws relating thereto. The court gave to the jury an instruction that they were to find a verdict according to the mining customs, if such customs were not contrary to law.

In both these respects we think the court erred. It is well settled, that where there is record evidence which can be obtained of any fact material to the issues, such evidence can only be received because it is of a higher character than parol testimony. To admit evidence of a secondary character where higher evidence of the fact is attainable, against the objections of the opposite party, is erroneous. It was not competent for the jury to determine for themselves whether mining customs were or were not contrary to law. This was a question of law, for the court to determine, and should have been settled as such before giving the case to the jury. If the customs were contrary to law, they had no validity, and should not have been given to the jury to pass upon. If not contrary to law, the jury should

have been instructed that upon finding certain facts, they should find accordingly in their verdict.

The court also instructed the jury if they found the plaintiffs' version of the case to be correct they should find a verdict in their favor. This was erroneous. A verdict is not to be determined by the opinions or views of the jury as to what a party's version of a case may be. Such version may or not be supported by the evidence. It may be entirely erroneous, and, hence, can not be made the foundation of a verdict, unless the facts which the jury find, support it. The pleadings in a case only make the issues which are presented for the consideration of the jury, and not the evidence upon which the verdict is to rest, and it is for the court to say what facts, if found by the jury from the evidence, shall be sufficient to maintain the case of either party. The court should instruct the jury, if they find from the evidence such and such facts to be established, then their verdict will be for the party, whichever one it may be in whose favor they were found. It appears from the evidence in the case that the plaintiffs had constructed a race or covered flume through which they sluiced their tailings from their mines; that such flume run from their diggings (which were situated above the defendant's mine) some two hundred feet upon the defendant's dumping ground, and that the "dump" therefrom was altogether on defendant's ground, and was two hundred feet below the grounds of the plaintiffs.

The defendant had also constructed a flume of like character from his diggings to a point on his own claim, which he used for dumping purposes, not far distant from the place where plaintiffs' flume or race ended, and that the tailings or "dump" of the defendant had filled up or obstructed the plaintiffs' flume to a distance of about one hundred feet, but still a hundred feet or more below the lower line of their claim. It was for this obstruction the plaintiffs brought their suit and recovered their judgment against the defendant. The evidence showed that the possession and ownership by the defendant, of his claim and dumping-ground, was prior in point of time to that of plaintiffs, and that no right had been given by the defendant to

plaintiffs to dump their tailings on his ground. Under such a state of facts we are clearly of the opinion, the plaintiffs had no right of action for the filling up of their flume so long as the defendant did nothing to prevent them from dumping on their own grounds. Their race was extended without any right, upon the defendant's grounds, and, so far as the evidence shows, without any necessity. The fall from their washings or mining operations to the lower line of their claim was sufficient to carry off their tailings and to dump them on their own grounds, and under no conceivable circumstances could they claim the right of carrying their flume on to the defendant's premises for the purpose of dumping their tailings thereon without his authority.

For these reasons we are of the opinion the judgment of the court below should be reversed and remanded for a *venire de novo.*